**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0048. KIL v. LEGEND BROTHERS, LLC et al.

MILLER, Presiding Judge.

Jay Kil seeks review of the superior court's order reversing the State Board of Workers' Compensation's (the "Board") award of workers' compensation benefits stemming from severe injuries he incurred during an armed robbery. He argues that the superior court erred when it reversed the Board's conclusions that his injury arose out of and in the course of his employment. We agree and reverse.

> In reviewing a workers' compensation benefits award, both this Court and the superior court must construe the evidence in a light most favorable to the party which prevailed before the Board. It is axiomatic that the findings of the State Board, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this Court has any authority to substitute itself as a fact finding body in lieu of the Board. However, we review de novo erroneous applications of

law to undisputed facts, as well as decisions based on erroneous theories of law.

(Citations and punctuation omitted.) *Sanchez v. Carter*, 343 Ga. App. 187 (806 S.E.2d 638) (2017). "Generally, an injury is compensable only if it arises out of and in the course of the employment. The test presents two independent and distinct criteria, and an injury is not compensable unless it satisfies both." (Citations omitted.) *Mayor & Alderman of Savannah v. Stevens*, 278 Ga. 166, 166 (1) (598 SE2d 456) (2004). "Whether an injury arises out of and in the course of employment is generally a mixed question of law and fact." *Lee v. Sears*, 223 Ga. App. 897 (479 SE2d 196) (1996).

Kil worked as a manager of the restaurant Legend Café. As manager, Kil oversaw the restaurant to ensure that it ran smoothly, operated the cash register, ensured that orders came out of the kitchen correctly, and oversaw the cleanliness of the establishment. Kil lived with his coworkers and the restaurant's owner, Willmore Lim. After returning from work each day, Kil and Lim would spend around an hour reviewing the restaurant's daily sales, receipts, accounts, and inventory.

After closing the restaurant in the early morning of May 19, 2016, Lim drove Kil and another coworker back to their home without taking a detour. On the way

2

back to their house, Lim had the receipts from the restaurant in his possession because he and Kil planned to review the restaurant's records at home as they normally did. Almost as soon as they pulled into the garage, three men ran up to the car and demanded at gunpoint that they hand over a "bag of money." Lim and Kil told the attackers that they did not have any money, and the attackers demanded that they exit the car and open the trunk. After exiting the car, one of the attackers noticed that Kil had a gun in his sweater. At that point, the attackers fled, but while they were fleeing, one of them shot Kil in the forearm. Kil spent over two weeks in the hospital and underwent multiple surgeries. Kil has not worked, nor has he been able to work, since the shooting.

Kil filed the instant application for workers' compensation benefits. Following a hearing, an administrative law judge ("ALJ") ruled in Kil's favor, concluding that his injury arose out of and in the course of his employment. The ALJ concluded that the injury occurred in the course of Kil's employment because Kil was in the "continuous employment" of his job as a manager at the time of the incident due to Kil's obligation to meet with Lim at home to review the day's receipts and inventory. The ALJ further concluded that Kil's injury arose out of his employment because his position required him to go home at a very late hour after leaving the restaurant to

review sales and inventory receipts with the owner, which allowed the robbers to accurately estimate his arrival home and put Kil at an increased risk of being shot during a robbery.

On appeal, the Board affirmed the ALJ's award. The Board concluded that the "continuous employment" doctrine did not apply but that there was sufficient evidence to conclude that Kil's injury otherwise occurred in the course of his employment. The Board reasoned that "[a]lthough the restaurant had closed for the day, the Employee's job responsibilities had not yet ended." To support its conclusion, the Board specifically relied on the evidence that Kil was the manager of the restaurant, that he was with the owner at the time of the shooting, and that Kil and Lim planned to continue working at home. The Board further concluded that the injury arose out of Kil's employment because the circumstances of the robbery demonstrated that the perpetrators had specifically targeted Kil and Lim due to their connection to the restaurant and that they had expected them to carry "money" or a "bag of money" when they returned home. The Board therefore concluded that a preponderance of the evidence showed that "the robbery would not have occurred but for the circumstances of [Kil's] employment, and it is apparent that there is a causal

4

connection between the conditions under which the employment was performed and the resulting injury."

The employer appealed to the superior court, which reversed the Board's award of benefits. The superior court concluded that Kil's injury did not arise out of his employment because he was injured as he arrived home from the restaurant, "an act which he would have had to do irrespective of the scope of his job duties." The superior court also noted that Kil was shot because one of the assailants noticed that he possessed a firearm, which the superior court concluded "had nothing to do with performing his duties for his employer." The superior court also concluded that Kil's injury did not occur in the course of his employment because he was injured at home, at a time when he was not performing any work duties, and he was not a "traveling employee" or a "24-hour on call employee."

We granted Kil's application for a discretionary appeal from the superior court's order.

1. First, we agree with Kil that the superior court erred when it determined that his injury did not occur in the course of his employment.

 "The Workers' Compensation Act is a humanitarian measure which should be liberally construed to effectuate its purpose." *Avrett Plumbing Co. v. Castillo*, 340

5

Ga. App. 671, 672 (798 SE2d 268) (2017). "[T]he words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place. To satisfy this requirement, the accident must have arisen within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." (Citations and punctuation omitted.) Id. at 672-673.

Here, we conclude that the Board did not err as a matter of law when it concluded that Kil's injury occurred in the course of his employment. Normally, "the general rule is that an injury sustained while an employee is going to and from his place of employment does not arise from the course and scope of his employment." *Avrett Plumbing Co.*, supra, 340 Ga. App. at 673. However, the scope of Kil's job responsibilities was an issue of fact for the Board to determine, and, notably, the Board here concluded that Kil's "job responsibilities had not yet ended" for the day, and there was evidence in the record to support this conclusion. The record is clear that one of Kil's key job responsibilities was to spend around an hour everyday at the home he and Lim shared going over the restaurant's daily sales, receipts, accounts, and inventory with Lim, the restaurant's owner. Furthermore, Kil was with the owner of the company at the time of the injury, and the two were in possession of the

6

receipts that they were going to review as they usually did at home each day. See

*Amedisys Home Health, Inc. v. Howard*, 269 Ga. App. 656, 658 (605 SE2d 60) (2004) ("In this regard, there is evidence that Howard had resumed the work of her employer at the time the accident occurred in that, in addition to the family's dinner, she was bringing time sensitive, job-related paperwork and job-related equipment into her home."). Kil and Lim also did not take any personal detours on the way home on the night of the robbery. Thus, there was evidence showing that Kil was exactly where he was expected to be to continue performing his duties as manager and that he was in the course of fulfilling those duties at the time of the robbery. See *Avrett Plumbing Co.*, supra, 340 Ga. App. at 672-673. Thus, under the unique circumstances of this case, we conclude that the Board did not err as a matter of law when it determined that Kil's injury occurred in the course of his employment, and so we reverse the superior court's conclusion to the contrary.

2. Kil next argues that the superior court erred when it reversed the Board's determination that his injury arose out of his employment because it improperly substituted its own factual findings for those made by the State Board. We agree.

> For an accidental injury to arise out of the employment there must be some causal connection between the conditions under which the

7

employee worked and the injury which [he] received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service. An injury arises out of the employment when a reasonable person, after considering the circumstances of the employment, would perceive a causal connection between the conditions under which the employee must work and the resulting injury.

(Citation and punctuation omitted.) *Cartersville City Schools v. Johnson*, 345 Ga. App. 290, 294 (812 SE2d 605) (2018). "Factual questions concerning causation are properly left to the State Board to determine rather than to the superior court or the appellate courts, and the Board's findings must be affirmed if there is any evidence to support them." (Citation and punctuation omitted.) *Hughston Orthopedic Hosp. v. Wilson*, 306 Ga. App. 893, 895 (1) (703 SE2d 17) (2010).

Here, the superior court improperly substituted its factual findings for those made by the Board. The Board concluded that the injury arose out of Kil's employment because the peculiar circumstances of the robbery demonstrated that the perpetrators had specifically targeted Kil and Lim due to their connection to the restaurant and that, as a result of their job responsibilities, the perpetrators could

8

therefore calculate the time that they arrived home (at a very late hour) and could expect them to have money in their possession when they returned home. In light of these findings, a reasonable person could see a causal connection between the circumstances of Kil's employment and the robbery. See *Sturgess v. OA Logistics Svcs., Inc.*, 336 Ga. App. 134, 136-139 (1) (784 SE2d 432) (2016) (the death of an employee who was killed during a shooting arose out of that employee's employment because "it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured."); *Hulbert v. Domino's Pizza, Inc.*, 239 Ga. App. 370, 373 (2) (521 SE2d 43) (1999) (assault on an employee arose out of employment when "the conditions of [the employee's] employment did not merely provide the time and place for the assault, but increased the risk of attack, and subjected him to a danger peculiar to his employment").

Furthermore, the superior court's emphasis on the fact that Kil would have needed to go home regardless of the scope of his job responsibilities is an erroneous application of the law. By focusing solely on the concept of "equal exposure," the superior court appears to have ignored the State Board's explicit finding that Kil's presence in the garage at the time of the robbery was a direct result of his job

9

responsibilities. See *Sturgess*, supra, 336 Ga. App. at 138 (1) ("[E]ven where the risk which caused the injury to the employee is common to the public at large–and therefore not peculiar to the employment–the injury arises out of the employment if a duty related to the employment *placed the employee in a locale which exposed the employee to the common risk*.") (citation omitted and emphasis in original). The determinative question is whether the claimant's job responsibilities were the proximate cause of his injury. See *Cartersville City Schools*, supra, 345 Ga. App. at 296-297. Here, as noted above, there was some competent evidence to support the Board's finding that Kil's job responsibilities were the proximate cause of his injury. Thus, because there was evidence in the record supporting the Board's decision and "[b]ecause the superior court improperly substituted itself as the fact-finder in lieu of the State Board, the superior court's decision must be reversed." *Hughston Orthopedic Hosp.*, supra, 306 Ga. App. at 897 (1).

Accordingly, we conclude that there was evidence supporting the Board's determinations that Kil's injury occurred within the course of his employment and that his injury arose out of his employment. We therefore reverse the judgment of the superior court.

*Judgment reversed. Rickman and Reese, JJ., concur.*