**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2304. METROPOLITAN ATLANTA REGIONAL TRANSIT
AUTHORITY v. THOMPSON.

MILLER, Judge.

In this case, Metropolitan Atlanta Regional Transit Authority ("MARTA")
unilaterally reduced Kathy Thompson's temporary total disability ("TTD") benefits
to temporary partial disability ("TPD") benefits after MARTA no longer allowed her
to work with restrictions in its transitional program. Thompson filed a workers'
compensation claim, and an administrative law judge agreed that MARTA was not
allowed to consider the period Thompson actually worked with restrictions for
purposes of OCGA § 34-9-104 (a) (2). MARTA appealed the ALJ's decision to the
Appellate Division of the Board of Workers' Compensation (the "Board"), which
affirmed. MARTA then appealed to the superior court, which also affirmed. Pursuant
to our grant of its application for discretionary review, MARTA contends that the trial

court erred by (1) failing to apply the proper standard of review, (2) by affirming the ALJ's interpretation of OCGA § 34-9-104 (a) (2), and (3) in affirming the award of attorney fees. We conclude that the Board's interpretation of OCGA § 34-9-104 (a) (2) was consistent with the statute's purpose, and as a result, we affirm the Board's ruling that MARTA improperly reduced Thompson's benefits. We also affirm the award of attorney fees to Thompson because there is evidence to show that MARTA acted without reasonable grounds when it limited Thompson from continuing to work in the transitional program and then unilaterally reduced her benefits.

> In the absence of legal error, the factual findings of the Board must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. Erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, however, are subject to the de novo standard of review.

(Punctuation and citation omitted.) *Strickland v. Crossmark, Inc.*, 298 Ga. App. 568, 569 (680 SE2d 606) (2009).

The parties stipulated to the following relevant facts. Thompson suffered a work-related injury on December 16, 2009. MARTA accepted the injury as compensable and began paying TTD benefits to Thompson. On April 7, 2010, Thompson's treating physician released her to return to light-duty work. Based upon the light-duty work release, MARTA served Thompson with a Form WC-104,

2

pursuant to Board Rule 104, on May 28, 2010. In its WC-104 notice, MARTA informed Thompson that her TTD benefits would be converted to TPD benefits on April 7, 2011 unless she returned to work at an earlier date.

On June 24, 2010, Thompson began working in MARTA's transitional program on light duty, and MARTA suspended Thompson's TTD benefits as a result. Thompson continued to work in the transitional program for one year, at which point she was not allowed to remain in the program. Following her participation in the transitional program, Thompson was unable to return to regular-duty work and, therefore, stopped working. Thereafter, on June 27, 2011, MARTA recommended paying her TTD benefits. On October 30, 2011, MARTA suspended Thompson's TTD benefits and began paying her TPD benefits, using a WC-2 based upon the prior WC-104.

Thompson then filed a workers' compensation claim, requesting that her full TTD benefits be reinstated. MARTA disagreed, arguing that under OCGA § 34-9-104 (a) (2), it could unilaterally suspend TTD benefits because Thompson was not working and it had been determined that she was capable of performing light-duty work for 52 consecutive weeks. After a hearing, an administrative law judge ("ALJ") ruled that MARTA was not authorized to include the time Thompson worked in the

3

transitional program in determining when it could unilaterally convert her TTD benefits to TPD benefits. Consequently, the ALJ ordered MARTA to make up the difference between the TPD benefits it had paid and the TTD benefits it owed. The ALJ further ordered MARTA to pay a fine for late payment and to pay Thompson's attorney fees. MARTA appealed the award to the Appellate Division of the Board, which affirmed. MARTA then appealed to the superior court, which likewise affirmed. MARTA now seeks review here.

1. MARTA first contends that the superior court erred by concluding that it was "constrained" to apply the "any evidence" standard of review without addressing the legal issues presented. MARTA's claim lacks merit.

It is true that, like this Court, the superior court must affirm the Board's findings of fact if any evidence supports them and it reviews legal questions under the de novo standard of review. See *Strickland*, supra, 298 Ga. App. at 569. We presume that the trial court knows the law and faithfully performs its duties. *MXenergy Inc. v. Ga. Public Svc. Comm.*, 310 Ga. App. 630, 633 (1) (714 SE2d 132) (2011).

In its order, while the superior court stated that its review was circumscribed by the "any evidence" standard for factual determinations, it also stated that the

4

Board's decision would be set aside, if among other things, that decision was contrary to law. The superior court determined that, after consideration of the parties' arguments and a thorough review of the record, MARTA had not presented any basis for setting aside the decision of the Board. There is no evidence in the record affirmatively showing that the superior court applied the wrong standard of review, and we will not presume error. See *MXenergy*, supra, 310 Ga. App. at 633 (1) (no error presumed simply because trial court's order did not contain the words "de novo review").

2. MARTA contends that the superior court erred in affirming the ALJ's interpretation of OCGA § 34-9-104 (a) (2). Specifically, MARTA argues that it could unilaterally reduce Thompson's TTD benefits to TPD benefits because she was not working at the time of the reduction and it had been determined that she was capable of performing some work for 52 consecutive weeks. We disagree.

"The interpretation of a statute by the agency charged with enforcing or administering its provisions is to be given great weight and deference, unless contrary to law." (Footnote omitted.) *City of Atlanta v. Sumlin*, 258 Ga. App. 643, 645 (1) (574 SE2d 827) (2002). Additionally, the workers' compensation statutory scheme is a

humanitarian measure that should be liberally construed to effectuate its purpose. See

*City of Waycross v. Holmes*, 272 Ga. 488, 489 (532 SE2d 90) (2000).

OCGA § 34-9-104 (a) (2) allows an employer to unilaterally reduce an employee's TTD benefits to TPD benefits once the treating physician releases the employee to work with limitations or restrictions. "In order to avail itself of the opportunity to unilaterally convert an employee from temporary total disability to temporary partial disability, MARTA was required to strictly comply with OCGA § 34-9-104 (a) (2)." (Citation omitted.) *Metro. Atlanta Rapid Transit Auth. v. Bridges*, 276 Ga. App. 220, 224 (1) (623 SE2d 1) (2005).

OCGA § 34-9-104 (a) (2) pertinently provides that:

When an injury is not catastrophic, as defined in subsection (g) of Code Section 34-9-200.1, and the employee is not working, the [B]oard shall determine that a change in condition for the better has occurred and the employee shall be entitled to the payment of benefits for partial disability in accordance with Code Section 34-9-262 if it is determined that the employee has been capable of performing work with limitations or restrictions for 52 consecutive weeks. Within 60 days of the employee's release to return to work with restrictions or limitations, the employer shall provide notice to the employee on a form provided by the [B]oard that will inform the employee that he or she has been released to work with limitations or restrictions, will include an explanation of the limitations or restrictions, and will inform the employee of the general terms of this Code section. . . . Whenever an employer seeks to convert an employee from benefits for total disability to benefits for partial disability as provided in this paragraph, such employer may

6

convert the benefits unilaterally by filing a form indicating the reason for the conversion as prescribed by rule of the [B]oard.

The primary question presented in this case is whether MARTA could count the one-year period Thompson was working in MARTA's transitional program for the purpose of establishing that "the employee has been capable of performing work with limitations or restrictions for 52 consecutive weeks" under OCGA § 34-9-104 (a) (2). The answer is no.

An employer cannot include the period of time an employee works with restrictions in the 52-week period under OCGA § 34-9-102 (a) (2). Moreover, we must give great weight to the interpretation adopted by the Board when it comports with the meaning and purpose of OCGA § 34-9-104 (a) (2), because the Board is charged with enforcing that statute. See *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 791 (2) (582 SE2d 109) (2003) (courts must give great weight to the agency's interpretation of the statute); *Ga. Dept. of Revenue v. Ga. Chemistry Council, Inc.*, 270 Ga. App. 615, 617, n.7 (607 SE2d 207) (2004) (if a statute is silent with respect to the specific issue, the question for this Court to determine is whether the agency's answer is based on a permissible construction of the statute). We cannot say that the Board's interpretation is contrary to law. Construing OCGA § 34-9-104

7

(a) (2) liberally, and reading the first sentence of OCGA § 34-9-104 (a) (2) as a whole,[1] it is clear that the purpose of the statute is to allow an employer to unilaterally convert benefits when an employee has been released to return to work with restrictions but has not actually returned to work. See OCGA § 34-9-104 (a) (2); James B. Hiers, Jr. et al., Ga. Workers' Compensation Law & Practice, § 23-11 (5th ed.) (unilateral reduction in benefits from TTD to TPD benefits authorized when the employee has been released to return to work with restrictions for 52 consecutive weeks but has not actually returned to work); G. Mark Cole, Workers' Compensation: Revise Extensively the Provisions Concerning Benefits and Coverage, Employer Ratings by Insurers, the Award Process, and Other Miscellaneous Aspects of the System, 9 Ga. St. U. L. Rev. 285, 290, n. 39 (1992) (noting that the provision for unilateral reduction of benefits was prompted by a desire to provide an incentive to employees, who had been released to work with restrictions but had not done so, to return to work).

---

[1] MARTA argues that the sentence creates two conditions that must be met before a unilateral reduction can occur, namely that (1) an employee is not working and (2) the employee has been released to work with restrictions for 52 consecutive weeks. While MARTA is correct that these conditions must met, it provides no authority that periods of employment can be included in the 52-consecutive weeks. We defer to the Board's resolution of the issue.

Given that the purpose of OCGA § 34-9-104 (a) (2) is to provide an incentive for employees to return to work, it would be incongruous with that purpose to allow for a reduction of benefits when Thompson is unable, through no fault of her own, to return to work since she was only allowed to participate in MARTA's transitional program for one year. Therefore, the superior court did not err in affirming the Board's interpretation of the statute and its conclusion that MARTA could not unilaterally reduce Thompson's benefits under the circumstances.

3. MARTA next contends that the trial court erred in imposing attorney fees because it had reasonable grounds to believe that it could unilaterally reduce Thompson's benefits. We disagree.

The Board is authorized to assess attorney fees under either OCGA § 34-9-108 (b) (1) or (2). Subsection (b) (1) provides that

> [u]pon a determination that proceedings have been brought, prosecuted, or defended in whole or in part without reasonable grounds, the administrative law judge or the board may assess the adverse attorney's fee against the offending party.

Similarly, subsection (b) (2) provides that

> [i]f any provision of Code Section 34-9-221 [method of payment], without reasonable grounds, is not complied with and a claimant engages the services of an attorney to enforce his or her rights under that Code section and the claimant prevails, the reasonable quantum meruit

9

fee of the attorney, as determined by the board, and the costs of the proceedings may be assessed against the employer.

Whether an employer defended against a claim or failed to comply with OCGA § 34-9-221 without reasonable grounds presents an issue of fact for determination by the ALJ or Board, and if there is any evidence to support the award, the superior court and this Court must affirm. See *Printpack, Inc. v. Crocker*, 260 Ga. App. 67, 72-73 (3) (b) (579 SE2d 225) (2003). However, attorney fees may not be awarded where the matter is closely contested on reasonable grounds. Id; *Autry v. Mayor & Aldermen of City of Savannah*, 222 Ga. App. 691, 692 (475 SE2d 702) (1996).

Here, the ALJ did not specify which Code section it was awarding fees under, but it found that MARTA acted without reasonable grounds in unilaterally reducing Thompson's benefits because the provisions of OCGA § 34-9-104 (a) (2) were straightforward and unambiguous. As discussed above, we agree, because the clear purpose of the statute is to encourage injured employees to return to work when they have been released to work by their doctor.

In this case, Thompson elected to return to work in MARTA's transitional program after getting a light-duty release, at which point her TTD benefits were suspended. There is no evidence in the record indicating why MARTA allowed Thompson to work in the transitional program for only one year. Had MARTA truly

10

believed that it could unilaterally reduce Thompson's benefits based upon the 52 week period that Thompson worked in the transitional program, it would have paid her TPD benefits at the end of her participation in that program. Instead, MARTA recommended paying Thompson TTD benefits. There is no evidence to explain why MARTA paid the TTD benefits for approximately five months following Thompson's participation in the transitional program before reducing her benefits in October 2011. Given the clear purpose of OCGA § 34-9-104 (a) (2), the absence of evidence showing why MARTA stopped Thompson from continuing to work in the transitional program, and the arbitrary date chosen by MARTA to reduce benefits from TTD to TPD, the ALJ was authorized to find that MARTA's actions were unreasonable. While MARTA contends that it acted with reasonable grounds because it followed Board Rule 104, MARTA's technical compliance with the rule does not overcome the fact that its actions violated the purpose and spirit of the statute. Since there is some evidence to support the ALJ's findings, we must affirm the award of attorney fees.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*